this principle, as distinguished from mental injury, and what is the character of nervous disorders or prostration, in this analysis, will doubtless be the subject of much discussion in subsequent cases.

Compare Renner *v.* Canfield, 36 *Minn.* 90 ; Buchanan *v.* West Jersey R. R. Co. 62 *N. J. L.* (23 *Vroom*) 265.

For recent cases affording a ready clue to the line of decisions on mental suffering as an element or agency in damages, see Larson *v.* Chase, (*Minn.*) 50 *N. W.* 238 ; Hale *v.* Bonner, (Tex. Sup.) 17 *S. W.* 605 ; Galveston, H. & S. A. Ry. Co. *v.* Thornsberry, (Tex. Sup.) 17 *S. W.* 521 ; Gallagher *v.* Bowie, 17 *S. W.* 407 ; 66 *Tex.* 265 ; Kane *v.* New York, N. H. & H. R. Co., (N. Y. App.) 30 *N. E.* 256 ; Hawkins *v.* Front Street Cable Ry. Co. (Wash.) 28 *P.* 1021 ; Augusta & S. R. Co. *v.* Randall, (Ga). 11 *S. E.* 706 ; Hannibal & St. J. R. Co. *v.* Martin, 111 *Ill.* 219 ; City of Chicago *v.* McLean, (Ill.) 24 *N. E.* 527 ; Heddles *v.* Chicago & N. W. Ry. Co., (Wis.) 46 *N. W.* 115 ; Sherwood *v.* Chicago & W. M. Ry. Co., (Mich.) 46 *N. W.* 773 ; 82 *Mich.* 374 ; Saldana *v.* Galveston, H. & S. A. Ry. Co., 43 *F.* 862 ; Davidson *v.* Southern Pac. Co., 44 *F.* 476 ; Kinney *v.* Folkerts, (Mich.) 48 *N. W.* 283 ; Haniford *v.* City of Kansas, (Mo.) 15 *S. W.* 753 ; Atchison, T. & S. F. R. Co. *v.* McGinnis, (Kan.) 26 *P.* 453 ; Terre Haute & I. R. Co. *v.* Brunker (Ind.) 26 *N. E.* 178 ; City of Chicago *v.* McLean, 35 *Ill. App.* 273, affirmed in 24 *N. E.* 527 ; O'Neill *v.* Dry Dock, E. B. & B. R. R. Co., 15 *N. Y. S.* 84 ; Montgomery & E. Ry. Co. *v.* Mallette, (Ala.) 9 *So.* 363 ; Baker *v.* Pennsylvania Co. (Pa.) 21 *A.* 979 ; Houston City Ct. Ry. Co. *v.* Sciacca, (Tex.) 16 *S. W.* 31.

---

# CORLISS *v.* E. W. WALKER CO.

*U. S. Circuit Court in Equity, District of Massachusetts ; August,* 1893.

1. *Equity ; right of privacy.*]   *It seems,* that an inventor is a public character, and that publication of his biography and picture without his consent, if he is living, or without the approval of his family if he is dead, is not an invasion of the right of privacy.

2. *Constitutional law.*]   Under the provisions of the U. S. Constitution (Art. I, 1st amend.), and the constitutions of most of the States, securing the freedom of speech, and of the press, a person may utter or publish what he pleases concerning

Corliss *v.* E. W. Walker Co.

another, without the latter's consent, if living, or the approval of his family, if dead, provided he commits no offense against public morals or private reputation.

Distinguishing Schuyler *v.* Curtis, 27 *Abb. N. C.* 387.*

3. *Injunction.*] Injury to property, whether actual or prospective, is the foundation of the jurisdiction of a court of equity. A court of equity cannot, therefore, enjoin the publication of a biography of a deceased person merely upon the ground that it injures the feelings of the family of deceased.†

4. *The same.*] *It seems,* that a court of equity has no jurisdiction to restrain a libelous publication.

5. *The same.*] The reproduction or publication of a picture of a deceased person, which has been obtained from the family of deceased upon certain conditions, which have not been complied with, will be enjoined upon the ground that its publication would be a violation of confidence, or breach of contract between the parties.

Suit in equity

Bill by Emily A. Corliss, Maria L. Corliss and George F. Corliss, the widow and children of George L. Corliss, deceased, to enjoin E. W. Walker Company, a corporation, and M. Lendsley Sanborn, Edmund W. Walker, and Charles L. Goodwin, the officers of said corporation, from publishing and selling a biography and picture of said George L. Corliss, deceased, on the ground that such publication would be an injury to the feelings of plaintiffs.

The further facts are fully stated in the opinion.

*Henry Marsh, Jr.,* and *James M. Ripley,* for plaintiffs.

―――― ―――――, for defendants.

---

* Aff'd in 64 *Hun,* 594. For further decision in same case, see p. 375 of this volume.

† For note on injunction against publicity, see 27 *Abb. N. C.* 379.

A little more than a hundred and fifty years ago the English House of Lords passed a standing order " that no one presume to publish the lives of any Lords, spiritual or temporal, deceased, without the permission of the heirs and executors (Standing Orders 113, A. D. 1739).

Lord CAMPBELL was obliged to move the repeal of this order, before he could publish his " Lives of the Lord Chancellors."

Corliss *v.* E. W. Walker Co.

COLT, J.—This suit is brought by the widow and children of George H. Corliss to enjoin the defendants from publishing and selling a biographical sketch of Mr. Corliss, and from printing and selling his picture in connection therewith. The bill does not allege that the publication contains anything scandalous, libelous, or false, or that it affects any right of property, but the relief prayed for is put upon the novel ground that such publication is an injury to the feelings of the plaintiffs, and against their express prohibition.

The counsel for plaintiffs in argument put the case upon the ground that Mr. Corliss was a private character, and that the publication of his life is an invasion of the right of privacy which a court of equity should protect. In the first place, I cannot assent to the proposition that Mr. Corliss was a private character. He held himself out to the public as an inventor, and his reputation became world-wide. He was a public man in the same sense as an author or an artist are public men. It would be a remarkable exception to the liberty of the press if the lives of great inventors could not be given to the public without their own consent while living, or the approval of their family when dead. But whether Mr. Corliss is to be regarded as a private or public character (a distinction often difficult to define) is not important in this case.

Freedom of speech and of the press is secured by the Constitution of the United States and the Constitutions of most of the States. This constitutional privilege implies a right to freely utter and publish whatever the citizen may please, and to be protected from any responsibility for so doing, except so far as such publication, by reason of its blasphemy, obscenity, or scandalous character may be a public offense, or by its falsehood and malice may injuriously affect the standing, reputation, or pecuniary interests of individuals (*Cooley's Cons. Lim.* [6th ed.] 518). In other words, under our laws one can speak and publish what he desires, provided he commits no offense against

public morals or private reputation. Schuyler v. Curtis, (27 *Abb. N. C.* 387) recently decided by the New York supreme court, and upon which the plaintiffs rely, is not in point. In that case, the court enjoined the defendants from erecting a statue of Mrs. Schuyler. The right of publication was not in issue in that case.

There is another objection which meets us at the threshold of this case. The subject matter of the jurisdiction of a court of equity is civil property, and injury to property, whether actual or prospective, is the foundation on which its jurisdiction rests (*In re* Sawyer, 124 *U. S.* 200, 210; *Kerr Inj.* 2d. ed. 1).

It follows from this principle that a court of equity has no power to restrain a libelous publication (Boston Diatite Co. v. Florence Manufacturing Co., 114 *Mass.* 69; Brandreth v. Lance, 8 *Paige*, 24).

The opinion of Vice-Chancellor MALINS in Dixon v. Holden (*L. R. 7 Eq.* 488) to the contrary, is disapproved by Lord Chancellor CAIRNS in Prudential Assurance Co. v. Knott (*L. R.* 10 *Ch. App.* 142).*

In Kidd v. Horry (28 *Fed. Rep.* 773), Mr. Justice BRADLEY, in speaking of Dixon v. Holden and several recent English cases, declares that they depend on certain Acts of Parliament, and not on the general principle of equity jurisprudence.

But in the present bill, it is not pretended that the publication is libelous, and therefore there can be no question as to the want of jurisdiction in this case.

As to the picture which accompanies the published sketch, the case stands on a different footing. The defendants obtained from the plaintiffs a copy of a portrait and a photograph of Mr. Corliss, from which they have made two plates, one of which they propose to insert in the publication. But it appears from the evi-

---

* But see Bonnard v. Perryman, *L. R.* 2 *Ch. Div.* 269 (1891), holding that a court of equity has jurisdiction to enjoin a libel, but that it should be exercised only with the greatest caution.

dence that these pictures were obtained on certain conditions, which the defendants have not complied with.

This matter directly concerns the exclusive right of property which the plaintiffs have in the painting and photograph ; and it would be a violation of confidence or a breach of contract between the parties to permit the defendants under these circumstances to use either of the plates (Pollard *v*. Photographic Co., 40 *Ch. D.* 345 ; Prince Albert *v*. Strange, 1 *Mc. N. & G.* 25).

The injunction is denied as to the publication and granted as to the use of either of the plates.