## McMORRIES v. HUDSON SALES CORP.
### No. 4743.

Court of Civil Appeals of Texas. El Paso.
June 21, 1950.

Rehearing Denied July 12, 1950.

Thomas & Thomas, Big Spring, for appellant.

Stubbeman, McRae & Sealy, Midland, for appellee.

PRICE, Chief Justice.

This is an appeal from an order of the Judge of the District Court of Martin County granting plaintiff, Hudson Sales Corporation, a temporary injunction against the defendant W. E. McMorries, who has perfected this appeal from such order.

Plaintiff alleged in substance that it was the wholesale distributor of the Hudson Motor cars for the State of Texas, that it sells all Hudson motor cars that are sold in Texas to Hudson dealers located in the state of Texas. In 1948 it sold to

a local dealer, the West-Tex Equipment Company, a Hudson convertible automobile at Midland, Texas, that thereafter said company sold at retail this automobile to the defendant.

Further, that after he purchased the said automobile defendant claimed that such automobile was defective and notified said local dealer and the plaintiff; that plaintiff offered to repair and replace any defective parts and still offers and renews its offer herein to repair or replace any parts therein which defendant may show to be defective, and has repeatedly offered and requested permission of defendant to take the automobile to Dallas, Texas, or if necessary to Detroit, Michigan, for an examination of the automobile and a determination of the defective parts; that plaintiff in so doing was acting under an express warranty given on the car by it; that the defendant refused to permit plaintiff to conform to its warranty but instituted suit No. 1691 styled McMorries v. West-Tex Equipment Co., et al., in the District Court of Martin County for breach of express, as well as implied warranties, and to rescind his purchase of the automobile and recover the purchase price thereof, or in the alternative, to recover damages; that this suit went against the defendant herein and on appeal to this court was affirmed; that despite this adverse judgment the defendant in this case caused to be painted in large letters signs and displays on said Hudson convertible automobile owned, used and operated by him reading as follows:

"Frame out of Line when Purchased New"
"Hudson Refuses to Make Good"

"Another Dissatisfied Hudson Owner" that said defendant is using, operating and driving said automobile not only in Martin County, Texas, but elsewhere throughout the state of Texas and the state of Oklahoma and other places with signs or displays appearing thereon in bold type and printing and purposely parks said automobile when it is not being driven in the most conspicuous place possible, and frequently at locations immediately adjacent to or in the proximity of

the places of business of Hudson dealers in the principal cities and towns in the state of Texas and elsewhere; further that said acts are extremely detrimental and derogatory, harmful and injurious to plaintiff and the products distributed by it; that it has requested defendant to cease and desist from said activities and to remove said signs and displays, but he has failed and refused to do so; further that each and all of said acts set out above caused immediate and irreparable injury, loss and damage to plaintiff; that the damage occasioned by such displays and other activities of said defendant to the reputation of plaintiff and to the good will of the public pertaining to Hudson products and to the dealers engaged in the retail of such products and to its business, is not only immediate and irreparable but immeasurable, and that unless defendant is restrained from what he is now doing plaintiff will suffer immediate and irreparable injury without adequate remedy at law.

Defendant answered by various special exceptions, denied that plaintiff had ever made a good faith offer to repair his automobile in the manner and to the extent necessary to make it the kind of a car it would be without the defects it had when it was bought; further that the frame of the Hudson was out of line when purchased; that Hudson has refused to make good and that he is another dissatisfied Hudson owner, and that he has the right to make such display on his car if he sees fit; further that defendant purchased this car through West-Tex Equipment Company and that it was defective when purchased and the defendant has attempted time and again to get it fixed and has never been able to get the car fixed and that with such defects there is practically no market value and he is dissatisfied, very much dissatisfied. After hearing the pleading and evidence the Judge granted plaintiff a temporary injunction in the following substantial terms:

That defendant shall cease and desist from displaying or permitting to be displayed on his Hudson convertible auto-

mobile to the public signs thereon reading as follows:

"Frame out of Line when Purchased New".

"Hudson Refuses to Make Good."

"Another Dissatisfied Hudson Owner", and from displaying or permitting to be displayed said automobile to the public with any other signs or writings thereon which are derogatory to plaintiff or the product which it sells.

The court was not requested and did not file findings of fact and conclusions of law. In the order granting the temporary injunction it is recited that it is granted for the reason that the actions of defendant in displaying his Hudson convertible automobile to the public and driving, using and operating it with the conspicuous signs thereon is derogatory to plaintiff and the product which it sells and is injurious and damaging to the reputation of plaintiff, and to the good will which its products enjoys with the public and to the dealers engaged in the retail sale of such products and is further damaging and injurious to the market for the same and the sale thereof, and does irreparable injury to the business of plaintiff, for which there is no adequate remedy at law.

It may aid in understanding the reasons for our disposition of this case to refer to another case between the same parties pending before this court. The defendant in this suit filed suit in Martin County seeking to rescind the contract of sale of the car in question here. Among the parties defendant to that suit were the plaintiff here, West-Tex Equipment Company, a corporation. Plaintiff finally withdrew all grounds of recovery but upon an implied contract of warranty of the fitness or merchantability. The trial court instructed the verdict in favor of all defendants. We recently handed down an opinion in that case, McMorries v. Clardy, Tex.Civ.App., 232 S.W.2d 167, sustaining the action of the trial court, substantially on the ground that the Hudson Sales Corporation did not sell the car in question to the plaintiff in that case, and as to the West-Tex Equipment Company it

afforded the plaintiff therein (defendant here) an opportunity to inspect the car and made no representation to him as to its condition or quality.

Among the defendant's points of error is: The trial court erred in granting the injunction because equity will not restrain libel alone and no illegal conspiracy or other unlawful acts were alleged in connection with the statements which appellee seeks to restrain; further that the court erred in enjoining appellant from publishing statements concerning appellee's property in the absence of pleading and proof that such statements were untrue.

Plaintiff does fail to allege that the statements contained on the signs complained of were untrue, does fail to allege that by such published statements defendant sought to extort money from the plaintiff or to compel the plaintiff to do anything. So far as plaintiff's pleading is concerned the alleged libel was not the means of accomplishing some unlawful act, but appears to have been an end in itself. It is only inferentially that it can be gathered from plaintiff's petition that any part of the sign painted on the automobile was untrue. There is an averment that the defendant would not permit the plaintiff to comply with an express warranty which it gave at the time of the sale by the retail dealer of the automobile in question to defendant.

▮ Among the cases cited by the plaintiff as upholding the action of the trial judge in granting the temporary injunction are Carpenters & Joiners Union v. Ritter's Cafe, Tex.Civ.App., 138 S.W.2d 223, and the same case again before the court in Tex.Civ.App., 149 S.W.2d 694, affirmed in 315 U.S. 772, 62 S.Ct. 807, 86 L.Ed. 1143; Gibraltar Savings & Building Ass'n v. Isbell, Tex.Civ.App., 101 S.W.2d 1029; Menard v. Houle, 298 Mass. 546, 11 N.E.2d 436; Carpenters & Joiners Union of America v. Ritter's Cafe, supra, was a labor controversy. It was sought by virtue of picketing to force Ritter's Cafe to break a contract he had with a third person. No such purpose appears here. In the case of Gibraltar Savings & Building

Ass'n, et al, v. Isbell, supra, an order was reversed denying a temporary injunction of an alleged libel. It does appear from plaintiff's petition therein that there was a libel. It quotes with approval from an opinion of Justice Cardozo in the case of Nann v. Raimist, 255 N.Y. 307, 174 N.E. 690, 73 A.L.R. 669. Equity does not intervene to restrain the publication of words on a mere showing of their falsity. Marlin Firearms Co. v. Shields, 171 N.Y. 384, 64 N.E. 163. It intervenes in those cases where restraint becomes essential to the preservation of the business or other property interests threatened with impairment by illegal combination or by other tortuous acts, the publication of words being merely an instrument to accomplish an unlawful end.

The case of Menard v. Houle, supra, by the Supreme Court of Massachusetts is cited by defendant as a parallel case sustaining the order of the trial court herein. The facts are remarkably similar to the facts herein. It was held that the allegations of plaintiff's bill were substantially established. In substance the allegations were that plaintiff sold to defendant an automobile in good standard condition; that about four months later defendant complained of the steering apparatus and demanded that plaintiff install a new steering apparatus. Plaintiff examined the car and found the steering apparatus in good condition and refused the request of defendant. Thereafter defendant drove the car in public places covered with this writing: " 'Don't believe what they say, this car is no good; I tried to have it fixed but they can't fix it and they will do nothing about it * * * this car is no good but it looks all right.' " [298 Mass. 546, 11 N.E.2d 437.]

It was further averred the claims made by defendant were knowingly false and made for the purpose of extorting money from the plaintiff. There is this distinction between the instant case and the Massachusetts case—there it was averred that the publication was knowingly false and made for the purpose of extorting money from the plaintiff. Here there are no such averments. Here there

is no averment or contention that the statement contained in the publication that the frame was out of line was untrue; the truth of the statement that defendant was a dissatisfied customer intrinsically appears from the whole record. Of course the publication carries the implication that there was, or had been at least one other dissatisfied customer. The truth of this is not called in question by plaintiff's petition. By inference at least plaintiff calls into question the statement in the publication "Hudson refuses to make good," and by the way, there is no averment in plaintiff's petition that Hudson referred to the Hudson Sales Corporation, the plaintiff here. By inference at least plaintiff calls into question the statement in the publication "Hudson refuses to make good." We here quote from plaintiff's petition as to this: "Plaintiff would further show that subsequent to his purchase of said automobile the said defendant W. E. McMorries claimed that such automobile was defective and notified the local dealer and this plaintiff of the defects which he claimed existed in the manufactured product. Thereafter plaintiff under its express warranty given by it offered to repair and replace any defective parts and still offers and renews its offer herein to replace and repair any parts in the automobile which the defendant may be able to show to be defective, and has repeatedly offered and requested permission of the defendant to take the automobile to Dallas, Texas, or if necessary to Detroit, Michigan, for an examination of the automobile and a determination of the defective parts if any, to the end that same may be replaced."

The term "refuses to make good" is not very definite. An offer to replace defective parts on a new car might not amount to an offer to make good. The words do not directly charge that plaintiff had violated a legal duty owed by it to the defendant. It is thought that the case of Menard v. Houle, supra, is distinguishable from the instant case. In that case it was averred and proven that the publication was libelous in that it was untrue and the purpose thereof was to unlawfully

extort money from the plaintiff. There is lacking a direct averment that the publication was untrue; that it was sought thereby to achieve an unlawful end.

Section 8, art. 1 of our Constitution provides as follows: "Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press." Vernon's Annotated Statutes Const. Sec. 8, art. 1.

The Fourteenth Amendment of the Constitution of the United States is a limitation on the power of the state to pass any law abridging the freedom of speech or press. Vernon's Ann.St.Const., Sec. 1, art. 14, U.S.C.A.Const. Amend. 14, § 1.

The defendant very earnestly impresses upon us the case of Ex parte Tucker, 110 Tex. 335, 220 S.W. 75, 76, as establishing that the trial court in granting this temporary injunction abused its discretion. The case involved a labor dispute. A local union, its officers and members were enjoined, among other things, from vilifying, abusing or using opprobrious epithets to or concerning any parties in the employment of plaintiff, and from any and all conduct towards such employees or concerning them which might be calculated to provoke or inspire a breach of the peace. An officer and member of the Union was charged with the violation of the injunction in having applied in conversation with one Duncan, slanderous epithets to the female telephone operators in its employ. The Relator was convicted of contempt. He sought release by writ of habeas corpus. He was released on the ground that it was beyond the power of the trial court to by injunction limit the rights guaranteed him by the Constitution, of free speech. It was there said: "There can be no justification for the utterance of a slander. It cannot be too strongly condemned. The law makes it a crime. But there is no power in courts to make one person speak only well of another. The Constitution leaves him free to speak well or ill; and if he wrongs another by abusing this privilege, he is responsible in damages or punishable by the criminal law."

Equity will protect the exercise of natural and contractual rights from interference by attempts at intimidation or coercion. Verbal or written threats may assume that character; when they do they amount to conduct or threatened conduct, and for that reason may properly be restrained. Cases of that sort or of an analogous nature are not to be confused with this one. So far we have been able to find, the case of Ex parte Tucker, supra, has never been overruled nor limited.

In our opinion the case of Carpenters & Joiners Union v. Ritter's Cafe, Tex.Civ.App., 138 S.W.2d 338 Tex.Civ. App., 149 S.W.2d 694, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143, in no way overrules or limits the Tucker case. In our opinion until overruled by the Supreme Court the case of Ex parte Tucker is the law of this State. The temporary injunction was a violation of the rights of defendant, guaranteed him under our bill of rights.

We have decided to reverse and remand rather than reverse and render this case for the reason that plaintiff may desire to amend its pleadings.

It is ordered that the order of the trial judge granting a temporary injunction be reversed and the cause remanded.